## TURNER v. CHARLTON et al.

### No. 2132.

Court of Appeal of Louisiana. First Circuit.

June 28, 1940.

Blanche, Hebert & Wilson, of Baton Rouge, for appellant.

Fred G. Benton, of Baton Rouge, for appellees.

OTT, Judge.

The plaintiff sets out in her petition that she is the owner of certain articles of furniture and house furnishings which she itemizes and values separately, these items aggregating in value, according to the petition, something over $400. She alleges that Mrs. Charlton and her husband have in their possession these articles of furniture and house furnishings and refuse to surrender them to her; that she placed this household furniture in the Cangelosi Building in September, 1938, under an agreement with the Charltons who were at that time in charge of said building and who then contemplated opening up therein a hotel and rooming house under the name of the Beach-Mar Hotel; that she, plaintiff, was to be employed as hostess at said hotel after the building was remodeled and when the hotel was opened up, and in the meantime her furniture was to be placed in said building and she was to be given the use of a room in said building, and the defendants were to have the right to use her furniture so long as she was employed in the hotel.

She further alleges that a part of her furniture was moved from said Beach-Mar Hotel by the defendants in December, 1938, to their premises at 333 Laurel Street in the City of Baton Rouge, and they continued to use the remainder of the furniture in said hotel; that her employment as hostess at said hotel was terminated on February 1, 1939, and she rented premises on Lafayette Street in which she intended to operate a rooming house and use her furniture therein, but when she attempted to secure her furniture from the defendants they refused to deliver it to her without any reason or cause for retaining possession of same.

Because of the malicious and unlawful refusal of defendants to deliver possession of said furniture to her, and because of their conversion of same to their own use, she alleges damage in the following amounts: $50 per month from February 1, 1939, on account of her inability to furnish and rent one of her apartments and $3 per day from said date for three beds which she claims she was unable to furnish because of her inability to get possession of her bed covering; $2,000 damages suffered by her on account of inconvenience, humiliation, embarrassment, mental anguish and distress, and injury to her credit on account of the malicious and highhanded acts of the defendants in refusing to give her possession of her furniture; and for the sum of $300 attorneys fees.

She prays that she be decreed the owner of said household goods and that the defendants be ordered to deliver possession of same to her, or in the alternative, that she recover judgment for the value of such articles of furniture as they fail to deliver, and damages in the amounts above mentioned.

The defendants filed exceptions of misjoinder of parties defendant and of no cause or right of action. These exceptions were overruled and are not pressed in this court, and we assume they have been abandoned. In their answer, the defendants admit that plaintiff stored articles of furniture in the Beach-Mar Hotel similar to those described in the petition, but that the greater part of this furniture was removed by the plaintiff to 333 Laurel Street where it now remains as the property of plaintiff subject to her removal at will. Defendants aver that the other items of furniture left at the hotel (which items are itemized in the answer) were purchased by the defendants from the plaintiff for use in the hotel and belong to defendants. They admit that plaintiff was engaged as hostess at the hotel and worked there for one month, but her services terminated on February 1, 1939. They deny any indebtedness to plaintiff whatever.

Judgment was rendered recognizing the plaintiff to be the owner of all the furniture originally delivered by her to the Beach-Mar Hotel and subsequently removed to 333 Laurel Street, and any other part of said furniture and effects still remaining at the hotel other than that which the defendants claim to have purchased from the plaintiff and which is itemized in the answer and in the judgment. Plaintiff's suit, including her claim for damages, was dismissed. She has appealed, and the defendants have answered the appeal, asking that the judgment be amended by specifically decreeing them to be the owner of the articles of furniture which they claim to have purchased from the plaintiff.

While this case was being argued and during our examination of it, we have been impressed with the thought that, according to the petition, this court has no jurisdiction of the appeal. In addition to the value of the furniture and effects sought to be recovered, the plaintiff is asking for damages in an amount far in excess of the jurisdiction of this court where the alleged damages do not arise out of a personal injury. Where this court does not have jurisdiction of the appeal because of the amount involved, it is not only our right, but our duty as well, to either dismiss the appeal or transfer it to the Supreme Court of our own motion. Hammond Box Co., Inc., v. Independence Strawberry Cooperative Association, La. App., 194 So. 95, and Richland State Bank v. Brock et al., La.App., 177 So. 454.

As a general rule the appellate jurisdiction of the court is to be determined by the pleadings, however, where the amount of damages claimed in the petition is obviously inflated and grossly exaggerated the court may have recourse to the evidence and other parts of the record to determine the actual or reasonable amount in controversy as a basis to fix appellate jurisdiction. McMahon v. Bresch, 149 La. 319, 89 So. 17; and Wagner v. New Orleans Ry. & Light Co., 151 La. 400, 91 So. 817. Our examination of the record in this case convinces us that, under no conceivable proof could the plaintiff recover damages in a sufficient amount which, together with the reasonable value of the furniture claimed to have been converted, would bring the amount in controversy above the jurisdiction of this court. For this reason and so as not to burden the Supreme Court with an appeal that properly belongs in this court, we have decided to retain jurisdiction of the appeal. However, we would not want to be understood as adopting a rule or approving a practice whereby a plaintiff could ask for inflated and even fanciful damages in a petition, and then in taking an appeal ignore the amount in controversy as shown by the pleadings and proceed on the assumption that the appellate court will take cognizance of the fact that the claim is inflated or fictitious and retain jurisdiction of a case which on the face of the pleadings should be appealed to some other court.

While there is a lot of testimony in the case, much of it consists of statements made by various parties on more or less incidental and collateral matters. The most relevant and important part of the plaintiff's testimony is to the effect that she moved her furniture into the Beach-Mar Hotel in September, 1938, under an agreement with the defendants that they could use the furniture in the operation of the hotel and rooming house which the defendants then contemplated opening up; that she was to be given the use of a room in the hotel free of charge and was to be employed as hostess when the hotel was opened up; that the building was remodeled and other furniture was purchased by the defendants, and part of her furniture was used in equipping and furnishing the place, and the remainder of her furniture that was not needed in the hotel was sent to 333 Laurel Street by Mrs. Charlton the latter part of December, 1938, just before the hotel was opened up. During the time that she was staying in this hotel and before she went to work as hostess—that is from September to the last of December, almost four months—she paid no storage for her furniture and paid no room rent for herself, except that she furnished one of the rooms with her furniture and paid no rent herself, but another lady who stayed in the room with her part of the time paid $10 per month.

According to plaintiff, she not only paid no rent for herself or storage for her furniture during this time, but the defendants loaned her $30 and gave her a Christmas present of $5 besides, and then while she worked as hostess during January, 1939, she was paid $60 for her services and given her room free. When her services were terminated the first of February she filed a suit in the City Court against Mrs. Charlton to recover the furniture and effects in the hotel and $25 damages for

their unlawful detention by Mrs. Charlton. It is significant that in that suit she did not ask for the recovery of the articles which had been stored on Laurel Street. While she seems to have secured a judgment in the City Court in her favor from which Mrs. Charlton took an appeal, we do not know what finally became of that suit, unless, as stated by the trial judge, that suit was abandoned by all parties concerned.

It remains a fact that when the plaintiff filed the present suit, she included the furniture at the Laurel Street premises as well as that in the hotel and increased her claim for damages to the amounts already mentioned. While there is some conflict in the testimony as to whether the plaintiff had this part of her furniture moved to the Laurel Street premises, or whether Mrs. Charlton had it moved there, this question is unimportant as the plaintiff practically admits that it was moved there with her consent. And while the plaintiff claims that Mrs. Charlton refused to permit her to take possession of the furniture at that address we think the record fully justifies the finding that neither of the defendants has made any claim to this part of the furniture nor in any way prevented her taking possession of it.

So that the only serious and vital question is whether or not the defendants purchased that part of the furniture which was left in the hotel and used in furnishing it in December, 1938. According to the testimony of the two defendants, the plaintiff was to store her furniture in two rooms of the hotel for $5 per month for each room, and she was to rent a room for herself and another lady for $10 per month; that plaintiff could not pay the storage, and during November an agreement was entered into whereby defendants would purchase such of plaintiff's furniture as they could use in furnishing the hotel after the repairs were made and the other necessary furnishings were purchased; that they then gave plaintiff a check for $10 which was an advance on the furniture that was to be purchased from her, and the storage due at that time and to become due by December would be $30, which was to be applied on the purchase price; that in December following they gave plaintiff a check for $5 to cover the balance due on the furniture which was kept by them and used along with other furniture which they had purchased

in furnishing the hotel, making the total amount paid plaintiff for this furniture $45.

About this time the remainder of the furniture which could not be used in furnishing the hotel was moved to the Laurel Street premises. A check for $10, dated November 5, 1938, payable to plaintiff and endorsed by her was introduced in evidence. This check is signed by both defendants and has a notation on it, "adv. on furniture & household goods." And another check for $5, dated December 24, 1938, payable to plaintiff and endorsed by her is also in evidence and this check has on it the notation, "Balance in full for furniture and household goods."

The plaintiff denies that these notations were on these checks when she signed them. The defendants say they were put on the checks before plaintiff endorsed them. All of the four checks that were given plaintiff for her four weekly salaries of $15 each have a notation on them that they are for salary, and plaintiff does not deny that these notations were on these checks when she endorsed them. It is shown by the testimony of Mrs. Charlton and one or two other witnesses that the former usually puts on the checks that she issues a notation as to what they are for.

In addition to the denial by plaintiff that she sold this part of her furniture to the defendants, she relies on the testimony of her sister and sister-in-law who testified in substance that they were present around the first of February when plaintiff was trying to get her furniture from the hotel, and Mrs. Charlton refused to let her have it, claiming that she was going to hold this furniture until plaintiff paid $30 which Mrs. Charlton had loaned her. Mrs. Charlton stated that she did agree to let plaintiff take back the furniture which had been bought from her if she would repay the $45 which had been paid for it, plus the $30 which she had loaned plaintiff; that as the latter did not have the money, she agreed to accept a note with some endorsers, but the plaintiff did not or could not get the endorsers.

In view of the conflict in the testimony as to just what was said on this occasion, we can get little convincing proof one way or the other from that incident, but we think that taking the evidence as a whole, the claim of the defendants to the effect that they purchased this furniture is supported by a preponderance of the evidence. In any event, we do not find suffi-

cient evidence on this point to justify us in reversing the finding of the trial judge.

As defendants are shown to be the owners of the items described in their answer and in the judgment, we think they are entitled to have the judgment amended so as to leave no doubt of their ownership.

For the reasons assigned, it is ordered that the judgment appealed from be amended by decreeing the defendants to be the owners of the items and articles of furniture and effects described in said judgment; that in all other respects said judgment be affirmed.

DORE, J., not participating in decision.